UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JOE HAND PROMOTIONS, INC.,

                Plaintiff,

      -against-

PETER MILLER, *et al.*,

                Defendants.
---------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
20 CV 132 (KAM) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On January 7, 2020, plaintiff Joe Hand Promotions, Inc., ("plaintiff") commenced this suit against defendants Peter Miller, individually, and as officer, director, shareholder and/or principal of Goldmaker Inc., d/b/a Estelle Lounge ("Goldmaker"), and Goldmaker (collectively, "defendants") for alleged violations of the Communications Act of 1934, 47 U.S.C. §§ 553, 605, and copyright infringement in violation of the Copyright Act, 17 U.S.C. §101, et seq. (Compl.[1] ¶ 1; Pl.'s Mem.[2] at 2).

Despite proper service,[3] defendants failed to file an answer or otherwise respond to the Complaint. Accordingly, plaintiff moved for entry of default on March 2, 2020. On March 9, 2020, the Clerk of Court entered a default against defendants, and on June 16, 2020, plaintiff moved for default judgment and damages. Thereafter, on February 16, 2021, the Honorable Kiyo A. Matsumoto referred this matter to the undersigned to issue a Report and

---

[1] Citations to "Compl." refer to the Complaint, filed on January 7, 2020, ECF No. 1.

[2] Citations to "Pl.'s Mem." refer to Plaintiff's Motion for Default Judgment with Supporting Memorandum of Law, filed on June 16, 2020, ECF No. 13-3.

[3] The Summons and Complaint were served on the corporate defendant on January 17, 2020, by leaving a copy with Sou Zouky, the authorized agent for service of process in the Office of the Secretary of State, and on defendant Peter Miller on January 21, 2020, by service upon Nina Vaskinia, a person of suitable age and discretion at his residence. (Pl.'s Mem. at 2; ECF Nos. 8, 9).

Recommendation.  For the following reasons, this Court respectfully recommends that, pursuant to 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii), plaintiff be awarded \$1,475 in statutory damages under the Communications Act, \$2,950 in enhanced damages under the Communications Act, \$1,475 for defendants' violation of the Copyright Act, and an additional \$1,475 in enhanced damages under the Copyright Act, for a total award of \$7,375.  It is further recommended that the court find Peter Miller and Goldmaker, Inc. jointly and severally liable for the damages award.

<u>FACTUAL BACKGROUND</u>

In the Complaint, plaintiff alleges that, pursuant to a closed-circuit television licensing agreement, plaintiff owned the copyright[4] and exclusive rights to commercially distribute the July 20, 2019 telecast of the Pacquiao v. Thurman Match, including all undercard matches (the "Event"), at commercial locations such as bars, restaurants, lounges, clubhouses and similar establishments.  (Compl. ¶¶ 6, 38, 39; Hand Aff.[5] ¶ 3; Pl.'s Mem. at 10-11).  These closed-circuit locations could only obtain access to the broadcast by entering into a contractual licensing relationship with plaintiff, which required each establishment to pay a fee to plaintiff.  (Hand Aff. ¶¶ 4, 5; Pl.'s Mem. at 3, 11).

Plaintiff alleges that, on July 20, 2019, defendant Goldmaker conducted business in the State of New York as "Estelle Lounge" from a location it operates, maintains, and controls at 1824 Avenue U, Brooklyn, New York 11229 (the "Establishment").  (Compl. ¶¶ 8, 9).  Plaintiff

---

[4] According to the Complaint, the Certificate of Registration for the copyright to this Pacquiao v. Thurman Match was filed with the U.S. Copyright Office on August 15, 2019, bearing Registration Number PA2-194-934.  (Compl. ¶ 38; <u>see also</u> ECF No. 13-4).

[5] Citations to "Hand Aff." refer to the Affidavit of Joe Hand, Jr., President of Joe Hand Promotions, Inc., in Support of Motion for Default Judgment, dated June 10, 2020, ECF No. 13-5.

further alleges that Peter Miller is an officer, director, shareholder, and/or principal of the entity that owns and operates the Establishment.  (Id. ¶ 8).  According to the Complaint, Miller had supervisory control over the operations of the Establishment on July 20, 2019, was present in the Establishment, and authorized the exhibition of the Event.  (Id. ¶¶ 9, 12-13).

Plaintiff maintains a list of authorized locations who have paid the required fee to exhibit the broadcast of the Event.  (Hand Aff. ¶ 6, Ex. B).  Plaintiff also retains auditors to canvass and identify establishments that exhibited the Event without authorization from plaintiff.  (Id. ¶ 7).  The auditors are provided with a list of authorized establishments prior to the canvass.  (Id. ¶ 8).  According to the records of the plaintiff, Peter Miller did not obtain a license to broadcast the Event within Estelle Lounge.  (Id. ¶ 9; Compl. ¶ 40).

On July 20, 2019, at approximately 9:30 p.m., Jamie Tamburo, an auditor for plaintiff, entered the Establishment, where he observed defendants broadcasting an undercard fight to patrons of the defendant Establishment.  (Id. ¶¶ 10, 11; Tamburo Aff.[6] at 1).  He was not charged a cover charge to enter the Establishment.  (Id.)  Tamburo observed three television sets, two on the left wall of the Establishment and one on the rear wall, displaying the third and fourth rounds of the Nery-Payano undercard bout.  (Id.)  He estimates that the capacity of the Establishment was up to 100 patrons, but does not provide any information as to how many patrons were in the bar at the time of the broadcast.  (Id.)  He took a video of the Exhibition and it has been provided as an attachment to plaintiff's submissions.  (Id. at 2).

Plaintiff alleges that defendants were not authorized to display the Event and that the showing of the Event was a violation of federal law.  (Compl. ¶¶ 24-27; Hand Aff. ¶ 11).

---

[6] Citations to "Tamburo Aff." refer to the Affidavit of Jamie Tamburo, Investigator for Plaintiff, dated July 20, 2019, ECF No. 13-8.

Plaintiff further asserts that the Event could not be intercepted "mistakenly, innocently, or accidentally," and has detailed several ways in which the Event could be illegally intercepted. (Compl. ¶¶ 25, 41-42; Hand Aff. ¶¶ 12, 13).

Plaintiff therefore seeks an award of $10,000 for defendants' violation under 47 U.S.C. § 605(e)(3)(C)(i)(II) and $10,000 for defendants' violation of 47 U.S.C. § 605(e)(3)(C)(ii). Additionally, plaintiff seeks an award of $5,000 for defendants' violation of 17 U.S.C. § 504(c)(1), and $5,000 for defendants' willful violation of section 501, pursuant to 17 U.S.C. § 504(c)(2), for a total of $30,000.

<u>DISCUSSION</u>

A. <u>Default Judgment</u>

1. <u>Legal Standard</u>

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. <u>See</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. <u>See</u> <u>id.</u>; <u>see also</u> Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. <u>See</u> Fed. R. Civ. P. 55(b). In this case, the Clerk of the Court entered a default against defendants on March 9, 2020. On February 16, 2021, the district court referred the motion for default judgment to the undersigned.

Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored" and doubts should be resolved in favor of the defaulting party.  Id.  Accordingly, the plaintiffs are not entitled to a default judgment as a matter of right simply because a party is in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion and may consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); and (3) the amount of money potentially involved.  See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).  The more money involved, the less justification for entering the default judgment.  Id.  Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default

judgment might have a harsh effect on the defendant.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

    2.  Entry of Default Judgment

        a.  Violations of 47 U.S.C. §§ 553(a)(1) and 605(a)

Plaintiff alleges that defendants violated 47 U.S.C. §§ 553(a)(1) and 605(a)[7] through the unauthorized interception of plaintiff's cable and satellite transmission.  (Compl. ¶¶ 26-30, 33, 35).  However, a court is not permitted to grant damages under both statutes for a single illegal transmission.  See International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993). Rather, the Second Circuit has stated that where a defendant is liable under both Sections 553 and 605, the court should award damages pursuant to Section 605.  Id.; see also Garden City Boxing Club, Inc. v. Polanco, No. 05 CV 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006), aff'd, 228 Fed. Appx. 29, 30 (2d Cir. 2007).  Accordingly, plaintiff chose to proceed pursuant to 47 U.S.C. § 605 alone.  (Pl.'s Mem. at 6).

In the present case, the allegations in the Complaint clearly establish the elements of liability necessary to state a claim under Section 605, which has been held to apply to the interception of cable communications originating as satellite or radio transmissions.  See International Cablevision, Inc. v. Sykes, 75 F.3d 123, 131-32 (2d Cir. 1996); see also Garden City Boxing Club, Inc. v. Polanco, 2006 WL 305458, at *5; Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. 01 CV 3945, 2002 WL 2022522, at *2 (E.D.N.Y.

---

[7] Section 553(a)(1) provides, in pertinent part, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).

    Section 605(a) provides, inter alia, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person."  47 U.S.C. § 605(a).

May 21, 2002); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107,

109 (E.D.N.Y. 1997).

In the immediate case, defendants' alleged conduct – the unauthorized interception,

receipt, and broadcast of the Event, which originated via satellite uplink – violates this statute.

Therefore, plaintiff's Complaint states a legitimate claim under Section 605.

b. Violations of the Copyright Act

Plaintiff also alleges a violation of the Copyright Act, 17 U.S.C. §§ 101 et seq. (the

"Act").  The Copyright Act is the principal statute protecting against copyright infringement.

The goal of copyright protection is to "encourage the creator of an original work in a medium of

expression . . . by giving the creator the exclusive right 'to reproduce' the work, 'to prepare

derivative works,' 'to distribute copies or phonorecords,' 'to perform' the work, and 'to display'

the work."  Warner Bros., Inc. v. Dae Rim Trading, Inc., 677 F. Supp. 740, 760 (S.D.N.Y. 1988)

(quoting 17 U.S.C. § 106).  Although the word "counterfeit" never appears in the Act, Section

501(a) of the Copyright Act proscribes the unauthorized reproduction and copying of works of

an owner holding an exclusive copyright in an original work of authorship.  17 U.S.C. §§ 501(a),

102; see Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1113 (2d Cir. 1986).

"Copying" means "'the infringing of any of the copyright owner's five exclusive rights,

described at 17 U.S.C. § 106.'"  Microsoft Corp. v. Harmony Computers & Elecs., Inc., 846 F.

Supp. 208, 210 (E.D.N.Y. 1994) (quoting S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1085 n.3

(9th Cir. 1989)).  Among the rights conferred upon the holder of a copyright are the exclusive

rights to engage in and to authorize the reproduction of the copyrighted work in copies, 17

U.S.C. § 106(1), to prepare derivative works based on the copyrighted work, 17 U.S.C. § 106(2),

and to distribute copies of the copyrighted work to the public by sale, rental, lease, or other

transfer of ownership.  17 U.S.C. § 106(3).  See Microsoft Corp. v. Harmony Computers & Elecs., Inc., 846 F. Supp. at 210-11.

It is well established that in order to prove the elements of a copyright infringement action, a plaintiff must show:  (1) ownership of a valid copyright, and (2) that defendant violated one of the exclusive rights held by the plaintiff in the work.  Sony Music Entm't, Inc. v. Does 1-40, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004) (quotation marks and citations omitted); see also Capitol Records, LLC v. ReDigi, Inc., No. 12 CV 95, 2013 WL 1286134, at *4 (S.D.N.Y. March 30, 2013); Psihoyos v. Pearson Educ., Inc., 855 F. Supp. 2d 103, 116 (S.D.N.Y. 2012) (citation omitted); Zappa v. Rykodisc, Inc., 819 F. Supp. 2d 307, 315 (S.D.N.Y. 2011); Pearson Educ., Inc. v. Kumar, 721 F. Supp. 2d 166, 175 (S.D.N.Y. 2010) (citations omitted).

Turning to the first element required to establish a claim for infringement, the Act provides that "a certificate of [copyright] registration made before or within five years after first publication of the work shall constitute evidence of the validity of the copyright."  17 U.S.C. § 410(c); see also CJ Prod. LLC v. Snuggly Plushez LLC, 809 F. Supp. 2d 127, 142 (E.D.N.Y. 2011); Yurman Design, Inc. v. Golden Treasure Imports, Inc., 275 F. Supp. 2d 506, 514 (S.D.N.Y. 2003).  While the presumption of validity is rebuttable, see Fonar Corp. v. Domenick, 105 F.3d 99, 104 (2d Cir.), cert. denied, 522 U.S. 908 (1997); Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 763 (2d Cir. 1991), it is the defendant's burden to prove the invalidity of the copyright.  See Folio Impressions, Inc. v. Byer Cal., 937 F.2d at 763 (citation omitted).

Here, plaintiff has demonstrated ownership of the copyright rights to the broadcast of the Event by providing the Certificate of Registration filed with the U.S. Copyright Office on August 15, 2019.  (ECF No. 13-4).  Although the registration was obtained on August 15, 2019, after the infringement occurred, this is not a bar to plaintiff's recovery because the registration was

obtained within five years of the publication of each work.  See Lewinson v. Henry Holt & Co.,
659 F. Supp. 2d 547, 559 (S.D.N.Y. 2009) (citations omitted) (holding that "for any work created
after January 1, 1978, copyright automatically inheres upon the work's creation").  Since
defendant has chosen not to appear in this action, plaintiff's proof that it holds the valid
copyright had not been challenged, and the Court finds that plaintiff has satisfied the first
element required to establish a claim for infringement.

With respect to the second element needed to establish an infringement claim, "[b]oth
unauthorized production and unauthorized distribution of copies of copyrighted material
constitute an infringement of the copyright."  Paramount Pictures Corp. v. Doe, 821 F. Supp. 82,
89 n. 6 (E.D.N.Y. 1993) (citing 17 U.S.C. §§ 106(1) and (3)).  Here, plaintiff has provided
evidence in the form of the auditor's affidavit showing that defendants broadcast and distributed
the Event without authorization, satisfying the second element demonstrating infringement.  By
failing to appear in this action, defendants have essentially conceded this element of plaintiff's
copyright infringement claim.

Furthermore, it is beyond dispute that defendants are in default.  Neither the corporate
defendant, Goldmaker, nor the individual defendant, Peter Miller, have responded to the
Complaint.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the
defendant's] default is crystal clear – it does not even oppose this motion").  In addition, the
amount of money involved in this case is not great; therefore, unlike cases with millions of
dollars potentially at stake, here the Court does not have to hesitate before entering default
judgment.  See id. (declining to enter default judgment, in part because plaintiff's damages
request ran "well into the millions of dollars," and giving defendant an opportunity to contest the
entry of default).  Given the amount of time afforded defendants and their apparent lack of

interest in participating in these proceedings, there is no compelling reason to further delay judgment.

Accordingly, it is respectfully recommended that plaintiff's motion for entry of a default judgment be granted and that damages be awarded as set forth below.

B.  Damages

Plaintiff's allegations in connection with damages, unlike its allegations pertaining to liability, are not deemed admitted in the context of a default judgement.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  It is the plaintiff's burden to prove damages and establish its entitlement to recovery in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages.  Id. While "the court must ensure that there is a basis for the damages specified in the default judgment, it may, but need not, make the determination through a hearing."  Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (citing Transportes Aereos De Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D. Del. 1985)), aff'd, 873 F.2d 38 (2d Cir. 1989).

Plaintiff has filed reasonably detailed affidavits, exhibits, and a memorandum of law pertaining to the damages requested.  As such, the Court has more than sufficient information to make an informed recommendation regarding damages without an evidentiary hearing.

1.  Statutory Damages Under Section 605

Where, as here, a violation of Section 605 has occurred, plaintiff is entitled to elect statutory or actual damages.  47 U.S.C. § 605(e)(3)(C)(i).  In this instance, plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), and enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii).  (Pl.'s Mem. at 5).

10

Section 605 provides for penalties "for each violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . " 47 U.S.C. § 605(e)(3)(C)(i)(II). In the absence of a clear statutory definition of "violation," the Court exercises its discretion in determining how many violations of Section 605 a defendant has committed. See Garden City Boxing Club, Inc. v. Rodriguez, No. 05 CV 3692, 2006 WL 1064189, at *3 (E.D.N.Y. Mar. 20, 2006); Garden City Boxing Club, Inc. v. Rosado, No. 05 CV 1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005).

Here, the nature of the illegal conduct alleged by plaintiff makes it difficult to determine the precise number of Section 605 violations. Due to this difficulty, most cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation. See, e.g., Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 110–11. As plaintiff's evidence indicates that the Event was illegally intercepted and broadcast at Estelle Lounge on the night of July 20, 2019, the Court calculates damages based on one violation of Section 605.

In determining the amount of damages that may be imposed for each violation within the range of $1,000 to $10,000 per violation, Section 605 leaves the decision within the discretion of the court. See 47 U.S.C. § 605(e)(3)(C)(i)(II); see also Time Warner Cable v. Taco Rapido Rest., 988 F. Supp. at 111 (citing cases); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993) (reducing an award from $250,000 to $10,000 for commercial broadcast of a boxing match). The factors to be considered in determining the appropriate amount of damages include the "'pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damage award would impose on the defendant relative

to the burden alternative relief would impose.'" Cablevision Sys. Corp. v. De Palma, No. 87 CV 3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (quotations omitted); see also Entertainment By J & J, Inc. v. Ramsarran, No. 01 CV 5223, 2002 WL 720480, at *2 (E.D.N.Y. Mar. 11, 2002).

In this case, plaintiff seeks $10,000 in statutory damages, which is within the range allotted by Section 605(e)(3)(C)(i)(II). (Pl.'s Mem. at 9). In addition, plaintiff seeks an enhanced statutory award of $10,000 for the willful, intentional violation of the statute. (Id.) To substantiate this request, plaintiff describes both its actual losses from the broadcast of the Event by Estelle Lounge, as well as the damage it generally suffers as a result of piracy. However, plaintiff relies upon general assertions in justifying its request for damages. Plaintiff's actual losses include the licensing fees that it would otherwise have charged defendants had their display of the Event been authorized. (Id. at 7). The standard rate card, which lists the licensing fee based on the capacity of the establishment, lists $1,475 as the licensing fee for a venue with a maximum capacity of 100 individuals. (Pl.'s Mem. at 10; RC[8]).

Plaintiff asserts that it has invested substantial sums in the promotion of its programming and that, as a result of piracy, "there has been undisputed erosion of commercial sales of proprietary programming, which undoubtedly results from the piracy of programs and copyright violations by unauthorized and unlicensed establishments." (Hand Aff. ¶¶ 15, 16). Moreover, plaintiff argues that piracy has "not only severely damaged our business, but also has a negative effect upon lawful customers . . . who have paid the proper licensing fees" and are unable to recoup their investments. (Id. ¶ 18). Given its loss of business, goodwill, and professional

---

[8] Citations to "RC" refer to the Rate Card, filed on July 20, 2019, ECF No. 13-6.

reputation, plaintiff argues that the imposition of $10,000 in statutory damages is appropriate in this instance. (Id.)

Courts have generally approached calculating damages in cases of unauthorized publication or use of communications in two different ways. Some courts have awarded a flat damage amount when considering the unauthorized receipt and broadcast of a cable program by a commercial establishment. See, e.g., Top Rank, Inc. v. Ortiz, No. 01 CV 8427, 2003 WL 1960211, at *3 (S.D.N.Y. Mar. 27, 2003); Kingvision Pay-Per-View Ltd. v. Rodriguez, No. 02 CV 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003) (awarding statutory minimum where plaintiff failed to establish any actual damages because plaintiff did not submit evidence of the cost of the license fee for defendants to broadcast the boxing event legally); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. at 484 (awarding statutory damages of $10,000 where it found the statutory maximum of $250,000 to be excessive); Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991) (awarding flat damage amount "based on the Court's view of the equities and not the estimate of the number of patrons").

Other courts have assessed damages based on the number of patrons in the commercial establishment during the broadcast. See, e.g., J & J Sports Productions, Inc. v. Welch, No. 10 CV 159, 2010 WL 4683744, at *4 (E.D.N.Y. Nov. 10, 2010) (multiplying the number of patrons present at the unauthorized broadcasting by the residential charge for the pay-per-view event being shown, $54.95); Garden City Boxing Club v. Rosado, 2005 WL 3018704, at *3-4 (same); Top Rank Inc. v. Tacos Mexicanos, No. 01 CV 5977, 2003 WL 21143072, at *4-5 (E.D.N.Y. Mar. 28, 2003) (awarding $50 per patron); Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., 2002 WL 2022522, at *3 (same); Time Warner Cable of New York City v.

Googies Luncheonette, Inc. ("Googies"), 77 F. Supp. 2d 485, 489-90 (S.D.N.Y. 1999) (same);

Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111 (same);

Cablevision Sys. Corp. v. 45 Midland Enters., Inc., 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same).

Accordingly, the Court may determine statutory damages by either awarding a flat amount based on the licensing fee defendants would have paid to show the Event legally and the balance of the equities, or by calculating damages based on the number of patrons present at the time the Event was broadcast and determining how much those individuals would have to pay to watch the Event at home with a residential license. Applying the first method, the Court notes that the Rate Card provided by the plaintiff reports that the commercial sublicense fee for an establishment with a maximum occupancy of 100 persons, such as Estelle Lounge, would have been $1,475. (Pl.'s Mem. at 10; RC). This amount is above the statutory minimum of $1,000 and is therefore sufficient. See 47 U.S.C. § 605(e)(3)(C)(ii). Further, applying the second method would be impracticable given the information filed with the Court. The Court received no information regarding the amount charged to individuals wishing to watch the event in residences or the number of patrons in the Establishment that evening.

The Court notes that plaintiff requests $10,000 in statutory damages. However, based upon a balancing of the equities, the Court respectfully recommends that plaintiff be awarded statutory damages in the amount of $1,475.

2. Enhanced Damages

Plaintiff also seeks $10,000 in enhanced statutory damages pursuant to Section 605(e)(3)(C)(ii). (Pl.'s Mem. at 8, 11 (citing 47 U.S.C. § 605(e)(3)(C)(ii))). The statute permits enhanced damages up to a maximum of $100,000 where the violation was committed willfully and for purposes of private financial gain. In determining whether an enhanced award for willful

conduct is warranted, some precedents suggest that the simple fact the Program was intercepted and broadcast without permission is an indication of willfulness.  See, e.g., J & J Sports Prods., Inc. v. Big Daddy's Theme Palace, No. 14 CV 2765, 2015 WL 58606, at *4 (E.D.N.Y. Jan. 5, 2015); J & J Sports Prods., Inc. v. Nest Restaurant & Bar, Inc., No. 17 CV 2194, 2018 WL 4921657, at *8 (E.D.N.Y. July 17, 2018).  Willful behavior under the statute has been interpreted to include "'disregard for the governing statute and an indifference for its requirements.'" ON/TV of Chicago v. Julien, 763 F.2d 839, 844 (7th Cir. 1985) (quoting TransWorld Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985)).  Courts also consider five factors to determine whether willful conduct warrants an award of enhanced damages: "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks."  See J & J Sports Prod., Inc. v. LX Food Grocery Inc., 2016 WL 6905946, at *5 (citations and internal quotation marks omitted).

In determining the enhanced damages for willful conduct, courts take varying approaches.  Some courts have awarded treble damages for willful violations.  See, e.g., J & J Sports Prods., Inc. v. Hot Shots, Inc., No. 09 CV 1884, 2010 WL 3522809, at *3 (E.D.N.Y. Apr. 27, 2010) (awarding plaintiff an enhancement of three times the statutory damages award of $2,747.50, or $8,242.50, for willfulness, for a total award of $10,990); J & J Sports Productions, Inc. v. Benson, 2007 WL 951872, at *5 (awarding statutory damages of $1,200, plus enhanced damages of $3,600, for a total of $4,800 where plaintiff did not advertise the event, charged no cover, and five patrons were present); J & J Sports Prods., Inc. v. Forbes, No. 07 CV 4394, 2008 WL 5263732, at *1 (E.D.N.Y. Dec. 17, 2008) (awarding $1,000 in statutory damages and $3,000

in enhanced statutory damages for willfulness, for a total of $4,000.00); J & J Sports Prods., Inc. v. Drake, No. 06 CV 246, 2006 WL 2927163, at *5 (E.D.N.Y. Oct. 11, 2006) (same).

Other courts have doubled the statutory damage award to arrive at enhanced damages. See, e.g., J & J Sports Prods., Inc. v. Onyx Dreams, Inc., No. 12 CV 5355, 2013 WL 6192546, at *6-7 (E.D.N.Y. Nov. 26, 2013) (awarding enhanced damages of $9,011.80, or two times the statutory damages of $4,505.90, for a total of $13,517.70, where plaintiff was not paid a licensing fee and defendant charged a cover fee of $20); Joe Hand Promotions, Inc. v. Elmore, No. 11 CV 3761, 2013 WL 2352855, at *8 (E.D.N.Y. May 29, 2013) (awarding $1,538.60 in statutory damages plus two times that, $3,077.20 in enhanced damages, for a total award of $4,615.80); Garden City Boxing Club, Inc. v. 135 Hunt Station Billiard, Inc., No. 07 CV 3849, 2012 WL 4328355, at *5 (E.D.N.Y. June 21, 2012) (awarding $4,396.00 in enhanced damages, plus statutory damages of $2,198.00, where violations were willful but there was no evidence of past or future violations), report and recommendation adopted, 2012 WL 4328347 (E.D.N.Y. Sept. 19, 2012); J & J Sports Prods., Inc. v. Tellez, 2011 WL 6371521, at *6 (E.D.N.Y. Dec. 20, 2011) (awarding $4,670.75 in statutory damages plus two times that amount or $9,341.50, representing enhanced damages where plaintiff showed no evidence of prior violations and where the revenues defendant earned were unclear).

Still other courts have awarded enhanced damages in an amount equal to that awarded for statutory damages. See, e.g., J & J Sports Prods. Inc. v. Orellana, 2019 WL 1177719, at *7 (awarding statutory damages of $3,000 and enhanced damages of $3,000); J & J Sports Prods. Inc. v. Johnny's Restaurant, Bar & Lounge Inc., 2016 WL 8254906, at *7 (E.D.N.Y. Dec. 15, 2016) (awarding damages of $3,297 and enhanced damages of $3,297); J & J Sports Prods., Inc. v. LDG Williams, LLC, 2011 WL 5402031, at *1 (awarding statutory damages of $2,534.15 and

enhanced damages of $2,534.15 for willfulness); Entertainment by J & J, Inc. v. Friends II, Inc., No. 02 CV 585, 2003 WL 1990414, at *4 (S.D.N.Y. Apr. 25, 2003) (awarding statutory damages of $2,500 and enhanced damages of $2,500); Entertainment by J & J Inc. v. Nina's Rest. & Catering, No. 01 CV 5483, 2002 WL 1000286, at *3 (S.D.N.Y. May 9, 2002) (same).

Finally, sometimes a court awards no enhancement.  See, e.g., J & J Sports Prods., Inc. v. Martinez, No. 07 CV 3455, 2009 WL 1913239, at *2 (E.D.N.Y. June 30, 2009) (awarding $3,000 in statutory damages and zero enhanced damages for an establishment with 40 patrons where plaintiff failed to show "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [or] defendant's charging a cover charge or charging premiums for food and drinks" (internal quotation marks and citation omitted)); J & J Sports Prods., Inc. v. Monte Limar Sports Bar, No. 15 CV 3771, 2017 WL 933079, at *5 (E.D.N.Y March 8, 2017) (awarding $2,200 in statutory damages and zero in enhanced damages because, although there were 100 patrons present, the court found no evidence of significant profit or commercial advantage); J & J Sports Productions, Inc. v. LX Food Grocery, Inc., 2016 WL 6905946, at *5 (awarding $2,200 in statutory damages and zero in enhanced damages where the auditor observed five patrons in the Establishment and the court found no evidence of commercial benefit); J&J Sports Prods., Inc. v. Louisias, No. 06 CV 339, 2006 WL 1662608, at *5-6 (E.D.N.Y. May 16, 2006) (awarding $2,500 statutory damages and zero enhanced damages for a barbershop in which five patrons were present because there was no evidence that defendants exhibited the Event for commercial advantage).

Here, the Court finds that to award statutory damages in the amount of $1,475 alone would understate the seriousness of defendants' conduct, particularly since, as plaintiff contends, plaintiff has suffered intangible losses in the form of "business investment, business opportunities, reputation, and goodwill." American Television & Commc'ns Corp. v. Floken, Ltd., 629 F. Supp. 1462, 1466 (M.D. Fla. 1986). The evidence demonstrates that defendants acted willfully in illegally intercepting the Event under circumstances warranting the imposition of enhanced damages under Section 605(e)(3)(C)(ii). Willful behavior under the statute has been interpreted to include "'disregard for the governing statute and an indifference for its requirements.'" ON/TV of Chicago v. Julien, 763 F.2d 839, 844 (7th Cir. 1985) (quoting TransWorld Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985)).

In this case, it is clear that defendants intercepted and exhibited the Event without entering into a licensing agreement with plaintiff or paying fees to plaintiff. According to plaintiff, there are multiple illegal and unauthorized methods of accessing the broadcast, including splicing an additional cable line, redirecting a wireless signal from an adjacent residence into the establishment, or misrepresenting their commercial establishment as a residential property to allow purchase of the Event. (Hand Aff. ¶ 13; Pl.'s Mem. at 7). Plaintiff argues that the exhibition of the Event at Estelle Lounge was done for commercial advantage and financial gain, as demonstrated by the fact that defendants advertised the Event on their Facebook and Instagram accounts. (Compl. ¶ 46, Ex. A).

Given the willful nature of the violation, this Court concludes that an additional award of $2,950 is warranted to deter future violations. Accordingly, for the reasons discussed above, it is respectfully recommended that plaintiff be awarded statutory damages of $1,475, plus an additional $2,950 in enhanced damages, for a total of $4,425 in damages.

3. Damages for Copyright Infringement

 Section 504 provides for damage awards in cases of copyright infringement.  Under the Copyright Act, "an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer, . . . or (2) statutory damages as provided by subsection (c)."  17 U.S.C. § 504(a).  The statute and the cases in this circuit interpreting the statute have made it clear that the victim of a copyright infringement is entitled to elect damages based on the actual damages suffered, plus any additional profits, or he may elect statutory damages to be awarded within certain specified limits.  See Twin Peaks Prods., Inc. v. Publications Int'l, 996 F.2d 1366, 1380 (2d Cir. 1993) (permitting plaintiff to elect statutory remedy where actual damages were not ascertainable); see also Aleshouse v. Ultragraphics, Inc., 754 F.2d 467, 469 (2d Cir. 1985); Engel v. Wild Oats, Inc., 644 F. Supp. 1089, 1091 (S.D.N.Y. 1986).

 Here, plaintiff has elected to recover statutory damages under 17 U.S.C. § 504(c).  (Pl.'s Mem. at 11).  Under the Act, the Court may award statutory damages of not less than $750 or more than $30,000, as the Court deems just.  17 U.S.C. § 504(c)(1).  In addition, the Act authorizes an award of enhanced damages of not more than $150,000 where the violation was willful.  17 U.S.C. § 504(c)(2).  Plaintiff argues that in considering an award of statutory damages under the Act, the Court may consider the expenses saved and profits reaped by defendants, plaintiff's loss of revenue, and the infringer's state of mind.  (Pl.'s Mem. at 12 (citing Bryant v. Media Right Prods., Inc., 603 F.3d 135, 143-44 (2d Cir. 2010)).  Urging the Court to recognize the "important deterrent purpose served by statutory damages," plaintiff cites cases in which courts have awarded "'two to six times the license fees defendants "saved" by not

obeying the Copyright Act.'" (Id. at 13 (quoting EMI Mills Music Inc. v. Empress Hotel, Inc., 470 F. Supp. 2d 67, 75 (D.P.R. 2006)).

Recognizing the important deterrent purpose served by an award of statutory damages and the fact that defendants' violation here was willful, the Court respectfully recommends an award of statutory damages under the Copyright Act of $1,475 for defendants' violation of Section 504(c)(1) and an enhanced award of $1,475 under Section 504(c)(2). Given that the Court has also recommended a total award of $4,425 for defendants' willful violation of the Communications Act for essentially the same conduct, and the recommended award under the Copyright Act falls within the statutory range of between $750 and $30,000 per violation, the Court finds that a total award of $7,375 provides compensation for plaintiff's losses and a sufficient deterrent effect on others who would could consider engaging in the type of piracy alleged here.

Accordingly, it is respectfully recommended that the court award plaintiff a total of $7,375 for its damages under the Communications Act and under the Copyright Act.

4.  The Individual Defendant's Liability

Plaintiff's Complaint names Miller as an "officer, director, shareholder and/or principal" of Goldmaker, and alleges that he is individually liable for the damages caused to plaintiff by the pirated Event. (Compl. ¶ 8). Plaintiff also alleges that Miller had a right and ability to supervise the activities of the Establishment, was present in Estelle Lounge on the night of the Event, authorized the broadcast of the Event, and had an obvious and direct financial interest in such activities. (Id. ¶¶ 9-12).

To establish a contributory violation of 47 U.S.C. § 605(a), plaintiff is required to demonstrate that Miller authorized the violations set forth in the Complaint. Garden City Boxing

Club, Inc. v. Morales, No. 05 CV 64, 2005 WL 2476264, at *10 (E.D.N.Y. Oct. 7, 2005) (citing cases); see also Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997). "'To establish vicarious liability, . . . [plaintiff] must show that . . . [the individual defendants] had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials.'" Garden City Boxing Club, Inc. v. Morales, 2005 WL 2476264, at *10 (quoting Kingvision Pay-Per-View, Ltd. v. Olivares, No. 02 CV 6588, 2004 WL 744226, at *5 (S.D.N.Y. Apr. 5, 2004) (internal citation omitted)).

The allegations in the Complaint sufficiently allege that Miller had the requisite control and financial interest to be held vicariously liable for the violation. (See Compl. ¶¶ 8-12). Since Miller has defaulted in this action, plaintiff's allegations remain unchallenged and must be accepted as true. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.

Accordingly, the Court respectfully recommends that defendant Miller be held jointly and severally liable with the corporation for damages awarded in this action.

5. Plaintiff's Attorneys' Fees and Costs

Pursuant to Section 605(e)(3)(B)(iii), plaintiff is also entitled to costs and reasonable attorneys' fees. See 47 U.S.C. § 605(e)(3)(B)(iii) (stating that the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails"); see also Int'l Cablevision v. Sykes, 997 F.2d at 1009. Here, the papers submitted in connection with the motion for default judgment do not contain a request for either costs or fees. Accordingly, the Court has not made any recommendation in connection with these types of damages.

CONCLUSION

For the foregoing reasons, this Court respectfully recommends that plaintiff's motion for default judgment be granted, and that plaintiff be awarded $1,475 in statutory damages under the Communications Act, $2,950 in enhanced damages under the Communications Act, $1,475 for defendants' violation of the Copyright Act, and an additional $1,475 in enhanced damages under the Copyright Act, for a total award of $7,375.  It is further recommended that the court find Peter Miller and Goldmaker, Inc. jointly and severally liable for the damages award.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order.  See 28 U.S.C. Section 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated:  Brooklyn, New York
        February 26, 2021

                                        /s/ Cheryl L. Pollak
                                        Cheryl L. Pollak
                                        Chief United States Magistrate Judge
                                        Eastern District of New York